UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| CEDAR RUN LIMITED, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:04-cv-519-LJM-WTL |
| | ) | |
| MEIJER STORES LIMITED PARTNERSHIP, | ) | |
| Defendant. | ) | |

**ORDER ON PENDING MOTIONS**

This cause is before the Court on Plaintiff's, Cedar Run Limited, Inc. ("Cedar Run"), Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.  Cedar Run also moves to strike certain paragraphs of Defendant's, Meijer Stores Limited Partnership ("Meijer"), Response Brief.

Cedar Run brought this action in Hendricks County Superior Court seeking a declaratory judgment regarding the use of certain real estate in the Heartland Crossing Business Park (the "Business Park"), located in Hendricks County, Indiana.  Meijer timely removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, and Meijer has counterclaimed for a permanent injunction. .  The parties have fully briefed their arguments, and the motion is now ripe for ruling.

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion to Strike and **GRANTS** Plaintiff's Motion for Summary Judgment.

**I.  MOTION TO STRIKE**

Paragraphs 4-6, 9-14, and 17 of Meijer's "Statement of Undisputed Facts" contain parole evidence about the negotiation of an agreement between Cedar Run and Meijer (the "Meijer

Covenants"), which was associated with the purchase of real estate by Meijer.  Cedar Run moved, both in its summary judgment motion and in a separate filing, *see* Docket No. 47, to strike said paragraphs.

Meijer does not assert that the covenants at issue are ambiguous.  In fact, Meijer argues that the "Meijer Covenants . . . are not so ambiguous as to require resort to . . . rules of construction." Def.'s Resp. Br. at 10 n. 1.  When the terms of a contract are clear and unambiguous, a court will not look to extrinsic evidence, but rather, will simply apply the contract provisions as written. *See, e.g., Stout v. Kokomo Manor Apartments*, 677 N.E.2d 1060, 1064 (Ind. Ct. App. 1997).  "It is an elemental principle of the law of contracts that when the agreement of parties is reduced to writing all prior negotiations between the parties are merged into the written agreement." *Nash v. Thomas*, 110 N.E.2d 355, 357 (Ind. App. 1953).   In these circumstances, the intent of the parties should be determined by the language employed within the four corners of the document giving the words contained therein their plain, usual, and ordinary meaning. *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1315 (Ind.  1996); *Samar, Inc. v. Hofferth*, 726 N.E.2d 1286, 1290 (Ind. Ct. App. 2000).  Further, evidence of prior expectations and conversations cannot alter the terms of a written agreement between the parties.  *See, e.g., Seastrom, Inc. v. Amick Const. Co., Inc.* 315 N.E.2d 431, 433 (Ind. Ct. App. 1974) (internal citations omitted).  Accordingly, paragraphs 4-6, 9-14, and 17 of Defendant's Statement of Undisputed Material Facts are hereby stricken.

## II.  <u>BACKGROUND</u>[1]

On October 21, 1999, Cedar Run filed and recorded the plat for Section 1 of the Business

Park with the Hendricks County, Indiana, Recorder's Office ("Recorder's Office").  Section 1 Plat,

Sheet 1.  The plat for Section 1 of the Business Park publicly dedicated portions of Raceway Road

to Hendricks County.  Section 1 Plat, Sheet 1.  On March 17, 2000, Meijer and Cedar Run entered

into the Meijer Covenants, which were publicly recorded on March 22, 2000.  Meijer Covenants at

1, 7-8.  Section 4 of the Meijer Covenants states, in pertinent part:

> 4. Additional Restrictions.  The following additional restrictions are hereby imposed
> on those portions of HCBP which are described on Exhibit C (and which are shown
> shaded on Exhibit D) (the "Additionally Restricted Lots"), and no part of the
> Additionally Restricted Lots shall be used for any of the following:
>
> > a. The operation of (i) a hypermarket or supercenter type of store, or (ii) a
> > membership general merchandise discount store, or (iii) a general
> > merchandise discount store, having a gross building floor area exceeding
> > 70,000 square feet
>
> * * *
>
> For the purpose of construing the foregoing restrictions, the following definitions
> shall apply: the term "operation" shall include not only the store building but also,
> [sic] the parking areas, drives, entries, truck docks, or any other improvements used
> in connection with or to support such a store or to support a shopping center of which
> such a store is a part.

Meijer Covenants, Section 4.  The Meijer Covenants contain an illustration and a survey of the

"Restricted Area."  Meijer Covenants, Exh. D; Pl.'s Exh. 8.

On June 13, 2001, the Hendricks County Area Plan Commission approved revisions to a

Section 2 plat for the Business Park, prepared by Cedar Run.  Meijer was provided with notice of

---

[1]      Meijer did not include a "Statement of Material Facts in Dispute," as provided for in
Local Rule 56.1.  The parties therefore agree that there are no genuine issues of material fact,
only issues of law ripe for ruling by the Court.

the public hearing on the Application.  Koons Aff., ¶¶ 8-9; Pl.'s Exh. 4.  Meijer never appeared or

remonstrated against revision to the plat.  03/13/01 Commission Minutes at 2, 04/10/01 Commission

Minutes at 9-11; 06/13/01 Commission Minutes at 1.  On July 31, 2001, Cedar Run recorded the

Section 2 Plat with the Recorder's Office, which binds part of the property constituting Section 2 of

the Business Park.  Section 2 Plat, Sheet 1.[2]

Cedar Run now intends to sell a lot in Section 2 of the Business Park for use as a supercenter.

Comp. ¶ 3; Schrout Aff., ¶ 6.  The location of the proposed new supercenter site is outside the

Restricted Area.  Meijer Covenants, Section 4; Meijer Covenants, Exhs. C and D; Survey; Shrout

Aff., ¶ 7; Koons Aff., ¶¶ 5-6; Pl.'s Exh. 8.  However, several roads passing through the Restricted

Area could be used to access the new supercenter site.  Pl.'s Exh. 8.

.

### III.  SUMMARY JUDGMENT STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut,

but rather is an integral part of the federal rules as a whole, which are designed to secure the just,

speedy, and inexpensive determination of every action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327

(1986).  *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68

(7th Cir. 1990), *cert. denied*, 111 S.Ct. 1317 (1991).  Motions for summary judgment are governed

by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

---

[2]      Apparently, the remainder of the streets at issue in this dispute were publicly dedicated in
the Section 2 plat revision, though Cedar Run has not so explicitly stated.  However, there are no
issues of material fact and, more specifically, Meijer does not contest that the streets were
publicly dedicated to Hendricks County.  As the validity or the timing of the dedication is not at
issue, Cedar Run's failure to provide the Court with such evidence is without effect on the
Court's analysis or findings.

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of

the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at

248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or

unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969

F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element

essential to his case, one on which he would bear the burden of proof at trial, summary judgment

must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir.

1996), *cert. denied*, 519 U.S. 1115 (1997).

## IV.  <u>DISCUSSION</u>

Interpretation of the terms of an unambiguous contract is traditionally a question of law and

is particularly suited for disposition on summary judgment. *See Kallman v. Radio Shack Corp.*, 315

F.3d 731, 735 (7th Cir. 2002). Cedar Run and Meijer agree that the Restricted Area shall not be used

for the operation of a hypermarket or supercenter type of store. *See* Meijer Covenants, Section 4.

The parties do not dispute that the proposed use would constitute a supercenter type of store, nor that

the proposed site for the store is outside the Restricted Area.

Meijer contends that the proposed supercenter site violates the Meijer Covenants' prohibition

on the operation of "parking areas, drives, entries, truck docks, or any other improvements used in

conjunction with or to support such a store or to support a shopping center of which such a store is

a part." Meijer Covenants, Section 4. Meijer takes the position that because two roads run through

the Restricted Area, a supercenter site may not be established anywhere adjacent to those roads

because they could be used to access the new supercenter. *See* Counterclaim, ¶¶ 12-15. Likewise,

Meijer argues that the existence of an entry to the supercenter within the Restricted Area also is prohibited.  *See id.*

Meijer's latter contention, that the Meijer Covenants prohibit the existence of an entry to the proposed supercenter site, is without factual basis.  The illustrative survey shows that there are multiple locations that can be used as entries to the new supercenter site.  *See* Pl.'s Exh. 8.  These entries are along Raceway Road and Enterprise Drive.  *Id.*  None of the potential entries is located within the Restricted Area.  *See* Illustrative Survey; Pl.'s Exh. 8; Shrout Aff., ¶¶ 8-10.

The Court must next address whether the use of roads passing through the Restricted Area to the proposed supercenter site violates the Meijer Covenants.  Enterprise Drive and Raceway Road were dedicated to Hendricks County by Cedar Run.  The Hendricks County Subdivision Control Ordinance specifically dictates that the roads at issue in this case are "public way[s] for purposes of vehicular traffic, including the entire area within the right of way," and are "public thoroughfare[s] which [have] been dedicated to the public use and accepted by the County."  Hendricks County Subdivision Control Ordinance, Section 2.02(120), 202(253); Pl.'s Exh. 14.  The validity of the dedication is undisputed by the parties.[3]  What is disputed is the effect of that dedication.

Indiana law prohibits a private party from restricting the public's right to use dedicated public streets.  In *City of Evansville v. Evansville Boat Club*, the Indiana Court of Appeals held that when language of a plat and acceptance by the public as a highway is sufficient, in the absence of a proper proceeding to vacate the highway, third parties do not have the authority to restrict use of the highway.  27 N.E.2d 389, 392 (Ind. Ct. App. 1940).  Likewise, once a street or right of way is

---

[3]    The requirements for a statutory dedication of a public street are as follows: (i) platting of the street, (ii) acknowledgement, (iii) proper municipal approval, and (iv) recording of the dedication in trust for the public, including title to an easement for a street or right of way. *See Beaman v, Smith*, 685 N.E.2d 143, 147 (Ind. Ct. App. 1997) (quotations omitted).

7

established, an indefeasible right is vested in the public and the owner of the fee simple interest underlying the public right-of-way cannot divest the public's interest therein. *Chaja v. Smith*, 755 N.E.2d 611, 616 (Ind. Ct. App. 2001). *See also Pittsburgh C. C. & St. L. Ry. Co. v. Warrum*, 82 N.E.934, 938 (Ind. Ct. App. 1907).

Meijer argues that the dedication of roads in the Business Park does not relieve Cedar Run of its duties under Section 4 of the Meijer Covenants by appealing to public rights created through dedication. Def.'s Resp. Br. at 16. Meijer cites *Moseley v. Bishop*, 470 N.E.2d 773, 779 (Ind. Ct. App. 1984), for the proposition that a landowner may by contract undertake obligations as to dedicated property that go beyond the obligations imposed by the local government after dedication. *Moseley* dealt with a public drain and a private drainage easement. The Indiana Court of Appeals required a private party to an easement to perform his duties that the county failed to perform. *Id*. at 775-76, 779. However, performance of such duties did not hamper, restrict, or abrogate the rights of the county concerning the public drain. *Id*. Meijer, on the other hand, seeks to restrict public access to these roads, thereby abrogating Hendricks County's power over public streets in the Business Park and not simply place upon Cedar Run additional obligations beyond those required by the county as now rightful owner of the roadways. Accordingly, Meijer's position runs contrary to the holding in *Moseley*.

Meijer also cites cases from outside the jurisdiction; *Maryland Estates Homeowner's Ass'n v. Puckett*, 936 S.W.2d 218, 219 (Mo. Ct. App. 1996) and *Verna v. Links at Valleybrook Neighborhood Ass'n, Inc.*, 852 A.2d 202 (N.J. Ct. App. 2004). Both cases involve lawsuits between homeowners and their homeowners' associations regarding restrictions on parking vehicles on streets which had been publicly dedicated. In each case, the courts concluded that the homeowners'

associations could regulate parking restrictions on the roads pursuant to agreements with the homeowners. *Vera*, 852 A.2d at 217; *Puckett*, 936 S.W.2d at 219. However, each court also specifically concluded that the homeowners' associations could neither restrict the public's right to use the streets nor restrict the local municipality's power to regulate the streets at issue. *See Vera*, 852 A.2d at 205-06, 208,08; *Puckett*, 936 S.W.2d at 219.[4] As Meijer seeks to both restrict the public's right to use and Hendricks County's power to regulate the streets, these cases do not support Meijer's position.

The undisputed facts also reveal that there are access routes to the proposed supercenter site that do not require passing through the Restricted Area. *See* Pl.'s Exh. 8. To prohibit the construction of a superstore site outside the Protected Area because members of the public could – but need not necessarily – access the site via public streets that pass through the Restricted Area, would conflict squarely with the public's and county's rights. Meijer is seeking to impermissibly dictate who can or cannot use public streets in the Business Park, and for what purpose.

In sum, the language of the Meijer Covenants is clear and unambiguous. The undisputed evidence demonstrates that the new supercenter site will be located outside of the Restricted Area. The streets which pass through the Restricted Area are dedicated to the public and are operated and maintained by Hendricks County. Therefore, Meijer may not restrict the public's right to use those

---

4 In fact, Meijer's argument acknowledges the *Puckett* court's holding that "although the homeowners' association *could not prevent members of the public from driving on its dedicated streets*, it could continue to enforce the resident's [sic] contractual obligation to abide by the covenant. . . ." Def.'s Resp. Br. at 16 (emphasis added). Likewise, Meijer's brief acknowledges the *Verna* court's conclusion that as long as the covenants sought to be enforced did not conflict with the public's rights, the association retained the power to force the homeowner to comply with his contractual obligations. *Id*. at 16-17.

dedicated streets.  Accordingly, there are no disputed issues of material fact and Cedar Run is

entitled to summary judgment as a matter of law.[5]

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's, Cedar Run Limited, Inc., Motion

to Strike and **GRANTS** Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED this 5th day of July, 2005.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Craig Douglas Doyle
DOYLE & FRIEDMEYER, P.C.
cdoyle@doylelegal.com

Mark Robert Galliher
DOYLE & FRIEDMEYER, P.C.
mgalliher@doylelegal.com

Joanne Boyle Friedmeyer
DOYLE & FRIEDMEYER, P.C.
jfriedmeyer@epitrustee.com

Marc T. Quigley
KRIEG DEVAULT
mquigley@kdlegal.com

Brian Christopher Fritts
KRIEG DEVAULT
bcf@kdlegal.com

James L. Shoemaker
DOYLE & FRIEDMEYER, P.C.
jshoemaker@doylelegal.com

---

[5]       While the new supercenter site is permissible under the Meijer Covenants, Cedar Run is
still prohibited from using any improvements to support the supercenter site within the Restricted
Area, including signage and advertising.